P. Sugar SMITH, Plaintiff–Appellant,

v.

**COUNTY OF HAMILTON, State of Ohio Public Defender's Office, et al., Defendants–Appellees.**

No. 00–4290.

United States Court of Appeals, Sixth Circuit.

April 19, 2002.

Before RYAN and GILMAN, Circuit Judges; and POLSTER, District Judge.[*]

OPINION

POLSTER, District Judge.

Plaintiff–Appellant P. Sugar Smith brought suit against her employer, the County of Hamilton, State of Ohio Public Defender's Office, and Public Defender Louis Strigari for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Chapter 4112 of the Ohio Revised Code. The district court granted summary judgment to Defendants–Appellees after finding that Smith's Title VII, § 1983, and state law claims were time-barred because the actions she complained of took place outside the two-year statute of limitations for such claims. Although the district court concluded that Smith's § 1981 claim was not time-barred, it dismissed the claim after finding that Smith failed to present sufficient evidence for a trier of fact to infer that she had been purposefully discriminated against. Smith appeals only that part of the district court's decision dismissing her § 1981 claim. For the reasons stated below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

Plaintiff–Appellant P. Sugar Smith has been an employee of the County of Hamilton, State of Ohio Public Defender's Office ("OPDO") since 1983. She began her career with the OPDO as an "Interviewer" in

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

the Adult Division. Smith's responsibilities included interviewing those accused of crimes to determine their eligibility for a public defender, entering notations concerning bond, court dates, and the name of the attorney assigned to defend the case, and tracking and reporting the results of each case.

In January 1995, Public Defender Louis Strigari transferred Smith from the Adult Division to the Juvenile Division. Although Smith continued to be classified as an Interviewer and had similar responsibilities to those that she performed in her previous position, she viewed her new position as less desirable than the one that she had held in the Adult Division.

On May 15, 1998, Smith filed a complaint with the Equal Employment Opportunity Commission (EEOC) in which she alleged that: (1) she had been denied pay raises and promotions because of her race; (2) OPDO demoted her by transferring her to the Juvenile Division; and (3) a supervisor named Linda Nurre created a hostile work environment by unnecessarily disciplining her and attempting to have her discharged. The EEOC issued a right to sue letter on November 18, 1998.

On February 5, 1999, Smith filed a Complaint in the U.S. District Court for the Southern District of Ohio against Strigari and the OPDO. In the Complaint, Smith alleged that Strigari engaged in frequent discriminatory actions against her because of her race and retaliated against her when she complained about his discriminatory actions. Smith further alleged that Strigari and OPDO maintained a policy and practice of favoritism and discrimination that favored Caucasians. Smith sought recovery pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Chapter 4112 of the Ohio Revised Code.

On December 15, 1999, Defendants–Appellees filed a motion for summary judgment. In the accompanying memorandum, they argued that Smith's claims should be dismissed because: (1) she failed to exhaust her administrative remedies; (2) she could not establish a *prima facie* case of discrimination because she did not suffer an adverse employment action and had not been treated less favorably than similarly situated employees; and (3) the OPDO had legitimate non-discriminatory reasons for personnel actions involving Smith. In support of their arguments, Defendants–Appellees submitted Smith's response to interrogatories, an affidavit from Louis Strigari, an affidavit from former OPDO employee Michael Mestemaker, a chart listing the positions and salaries of thirteen OPDO support employees from 1995 to 1998, and the transcript from Smith's deposition.

In her responses to interrogatories, Smith pointed to the following incidents as bases for her claims of discrimination: (1) Strigari transferred her from the Adult Division to the Juvenile Division and denied her the opportunity to transfer back to the Adult Division; (2) Michael Mestemaker, a Caucasian male employee, was transferred from the Juvenile Division back to the Adult Division after he complained about being transferred to the Juvenile Division; and (3) Donna Johnson, a Caucasian female, was given Smith's job in the Adult Division after Smith was transferred to the Juvenile Division.

The other evidence submitted by Defendants–Appellees refuted each of the claims Smith made in her responses to interrogatories. According to the affidavit of Louis Strigari, he transferred Smith to the Juvenile Division because of a reduced workload in the Adult Division combined with an increased caseload in the Juvenile Division. Strigari determined that Smith's ex-

perience made her the most qualified employee to perform the necessary tasks in the Juvenile Division. Strigari's affidavit also establishes that Donna Johnson was hired for a clerical position in the Adult Division after Plaintiff–Appellant had been transferred to the Juvenile Division. Ms. Johnson was selected for the position because she possessed considerable computer skills and billing experience. Although the position was posted, Plaintiff–Appellant did not apply for it. Ms. Johnson's salary was several thousand dollars less than Plaintiff–Appellant's salary at the time. Strigari claims that Mike Mestemaker was involuntarily transferred from the Juvenile Division back to the Adult Division to fill an unexpected vacancy. He subsequently resigned to accept employment with the Juvenile Court. Mike Mestemaker's affidavit confirms that he had no problem working in the Juvenile Division and that his transfer back to the Adult Division was not voluntary.

On January 4, 2000, Smith filed a memorandum in opposition to the summary judgment motion. In her memorandum, Smith argued that the following actions by Defendants–Appellees were discriminatory:

(1) She was transferred from the Adult Division to the Juvenile Division in retaliation for complaining about Linda Nurre, a supervisor she believed was discriminating against her, to Skip West, an African–American male who was on the Defender Commission. The transfer was an adverse employment action because she was required to drive more, lost the opportunity to accrue compensatory time, and her position in the Juvenile Division is less prestigious or important than her position in the Adult Division.

(2) After Smith was transferred to the Juvenile Division, Jane Brinkman, a Caucasian female, was given Smith's old job. The OPDO tried to mask this fact by referring to Brinkman as a "paralegal." When Brinkman left her job, she was replaced by Celeste King, a Caucasian female. King, in turn, was replaced by Shannon Gresham, another Caucasian female. These Caucasian employees were given computer training, but Smith was not.

(3) Judy Sachs, a Caucasian female, was promoted to Administrative Assistant and then Deputy Administrator because of some "pull," even though she had no special qualifications.

(4) Robin Eisele, a Caucasian female, also was hired for a preferred position as Administrative Assistant and received substantial raises relative to her service time.

(5) Mike Mestemaker was transferred from the Adult Division to the Juvenile Division after what he allegedly claimed was "trouble with Strigari." Mestemaker's father, a former judge, complained about the transfer and within 30 days, Mestemaker was moved back to the Adult Division. Smith complained to Strigari about her transfer, but was never transferred back to the Adult Division.

In support of these claims, Smith offered her own affidavit and the affidavit of Jane Brinkman. Smith's affidavit states in a conclusory fashion exactly the same arguments that she relates in her opposition brief. Brinkman's affidavit indicates that she performed some of the same tasks that Plaintiff–Appellant had performed, but that she also performed other tasks such as assisting attorneys in preparing motions.

On May 25, 2000, the district court held a hearing on the motion for summary judgment. Although the record does not include a transcript of the hearing, Smith's attorney apparently raised the favorable treatment of a Judy Sachs, a Caucasian female who came to OPDO as an Interviewer after Smith, as a basis for Smith's discrimination claims. After the hearing, Smith's attorney faxed a letter stating that "[p]er the arrangement at the oral argument on summary judgment today, I am faxing herewith evidence in the record on the employment and promotion of white female Judy Sachs." In the letter, Smith's attorney pointed to the following evidence: (1) three pages of Smith's deposition testimony (previously attached to the Defendants–Appellees' motion for summary judgment) in which Smith claims that Sachs was hired as an Interviewer after her and was promoted several times over her; (2) two directories from the OPDO listing Sachs as Administrative Assistant to Deputy Administrator John Dowlin, Jr.; and (3) the salary chart previously attached to Defendants–Appellees' summary judgment motion.

On September 19, 2000, the district court entered summary judgment in favor of Defendants–Appellees. The court found that Smith's Title VII, § 1983 and state law claims were time-barred because the actions of which she complained took place outside of the two-year statute of limitations. The court held that even if the claims were not time-barred, Smith had not established a *prima facie* case of discrimination. The court specifically found that the alleged discriminatory promotions of King, Gresham, Sachs, and Eisele were not sufficient to demonstrate a discriminatory promotion system. Although the court determined that Smith's § 1981 claim was not time-barred (after determining that the four-year statute of limitations specified in 28 U.S.C. § 1658 applies to such claims), it dismissed the § 1981 claim on its merits after finding that Smith failed to present sufficient evidence for a trier of fact to infer purposeful discrimination.

Smith filed a notice of appeal on October 11, 2000. On appeal, Smith argues that the district court improperly granted summary judgment as to her § 1981 claim. Smith also argues that the district court failed to consider and comment on the evidence regarding Judy Sachs that her attorney faxed to the court immediately after the hearing on the summary judgment motion.[1]

## IV. LEGAL ANALYSIS

### A. Standard of Review

A district court's order granting summary judgment is subject to *de novo* review. *Strouss v. Michigan Dep't of Corrections,* 250 F.3d 336, 341 (6th Cir.2001). Summary judgment is appropriate if the party who bears the burden of proof at trial does not establish an essential element of his or her case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

---

1. Defendants–Appellees did not file a notice of cross-appeal regarding the district court's finding that Smith's § 1981 claim was not time-barred. Consequently, this Court is without jurisdiction to address the issue. *See, e.g., Francis v. Clark Equip. Co.,* 993 F.2d 545, 552 (6th Cir.1993); *Young v. Sabbatine,* No. 99–6336, 2000 WL 1888672, at *2 n. 2 (6th Cir. Dec.19, 2000). Because this issue is not before us, we express no opinion as to the correctness of this aspect of the district court's ruling.

that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In order for there to be a genuine issue for trial, there must be sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

B. Section 1981 Claim

Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of employment contracts. 42 U.S.C. § 1981(b). In order to sustain a § 1981 employment discrimination claim, a plaintiff must be able to establish that the employer purposefully discriminated against him or her. *See, e.g., Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 378 (6th Cir.1984) ("Purposeful discrimination is a prerequisite to liability under section 1981.").

Section 1981 employment discrimination claims are analyzed under the Title VII framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Newman v. Federal Express Corp.,* 266 F.3d 401, 405 (6th Cir.2001). Under this framework, a plaintiff can establish a *prima facie* case by showing that he or she: (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment decision; and (4) was treated less favorably than a similarly situated person outside of the protected class. *See, e.g., Braithwaite v. Timken Co.,* 258 F.3d 488, 493 (6th Cir. 2001).

If the plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to set forth a legitimate non-discriminatory reason for the adverse employment action. *Id.* Once the employer

offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the employee to demonstrate that the employer's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Id.* In order to establish pretext, the plaintiff must produce evidence sufficient for a jury to reasonably reject the employer's explanation and infer that the employer intentionally discriminated against the plaintiff. *Id.* In order to defeat summary judgment, a plaintiff "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Mitchell v. Toledo Hospital,* 964 F.2d 577, 584 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

Smith contends that her transfer to the Juvenile Division was an adverse employment action because: (1) she is required to drive back and forth between two locations; (2) she lost the opportunity to earn compensatory time; and (3) her work at the Adult Division was more important than her work in the Juvenile Division because the penalties in the Juvenile Division are less severe. Smith's only evidence in support of these arguments are conclusory statements in her own affidavit. Such statements are not sufficient to defeat a summary judgment motion. *See, e.g., Doren v. Battle Creek Health System,* 187 F.3d 595, 598–99 (6th Cir.1999); *Wade v. Knoxville Utilities Board,* 259 F.3d 452, 463 (6th Cir.2001).

■ Even if the Court accepts Smith's conclusory allegations as true, they do not establish an adverse employment action. Although a transfer may be actionable as an adverse employment action, the conditions of the transfer must have been such that a reasonable person would find them objectively intolerable. *Strouss v. Michigan Dep't of Corrections,* 250 F.3d 336, 342–43 (6th Cir.2001). Work reassign-

ments without salary or work hour changes do not ordinarily constitute adverse employment decisions. *See, e.g., Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987); *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir.1996).

In her deposition, Smith admitted that her salary did not decrease and that she did not lose any benefits as the result of her transfer to the Juvenile Division. Nor is there any evidence that Smith's job responsibilities in the Juvenile Division were so unpleasant or difficult that the transfer amounted to a constructive discharge. Smith retained her title and performed tasks similar to those that she performed while in the Adult Division. The fact that for a period of time Smith had to drive from one county building to another does not amount to a materially adverse change. *See, e.g., Kocsis v. Multi–Care Management, Inc.*, 97 F.3d at 886 (discussing with approval the finding in *Darnell v. Campbell County Fiscal Court*, 731 F.Supp. 1309, 1313 (E.D.Ky.1990), *aff'd*, 924 F.2d 1057 (6th Cir.1991), that an additional 20–minute drive did not impose an onerous burden). Nor do Smith's claims regarding her loss of opportunity for compensatory time establish that her transfer was an adverse employment action.[2] *See, e.g., Joiner v. Ohio Dept. of Transportation*, 949 F.Supp. 562, 567 (S.D.Ohio 1996) (loss of opportunity for overtime and loss of supervisory responsibility insufficient to establish that lateral transfer was an adverse employment action). Finally, Smith's subjective belief that her position in the Adult Division was somehow better than her position in the Juvenile Division is insufficient to defeat a motion for summary judgment. *See, e.g., Kocsis v. Multi–Care Management, Inc.*, 97 F.3d at 886.

■ Smith's claims regarding the favorable treatment of Caucasian employees within the department also must be rejected. Smith's deposition transcript includes several pages in which Smith identifies employees by their race. When one compares that listing of employees with the salaries on the salary chart, it becomes apparent that for the years listed, African–American employees received salaries comparable to those of similarly situated Caucasian employees. Indeed, the first and third highest paid employees on the salary chart are African–American women. Of the thirteen employees listed on the chart, Smith was the fifth highest salaried employee and was the highest paid Interviewer in the department. Such a comparison hardly suggests a policy and practice of discrimination against African–American employees.

■ Smith's contentions regarding her supposed replacement in the Adult Division by Jane Brinkman, and eventually, Celeste King and Shannon Gresham, are also without merit. While it appears that these women performed some of the same tasks as Smith had, Brinkman's affidavit and Smith's own deposition testimony indicate that the positions were not identical. Furthermore, the salary chart reveals that Brinkman earned approximately $4,000 less than Smith in 1998 while Gresham earned nearly $9,000 less than Smith.[3] Smith has offered no evidence that any of these individuals were similarly situated to her or that they were treated more favorably.

■ Nor has Smith offered any evidence of racial discrimination against her by the hiring or promotion of Robin Eisele,

---

**2.** In any event, Smith has offered no proof that her situation regarding compensatory time was more favorable when she was in the Adult Division. In fact, in her deposition Smith complained that her supervisor in the

Adult Division had reduced her compensatory time.

**3.** King's salary is not listed on the chart.

Donna Johnson, and Judy Sachs. There is no evidence that the positions filled by either Eisele or Johnson are objectively preferable to Smith's position. Eisele is listed on the salary chart as a secretary who earned approximately $1,500 less than Smith in 1998. Johnson is listed on the salary chart as a secretary who earned $17,500 in 1998—approximately $6,000 less than Smith earned in the same year. Although Sachs earned more than Smith in her position as Assistant Deputy Administrator, Smith presents no evidence regarding the requirements of that position and her own qualifications to fill it. Nor does Smith offer any evidence regarding when Sachs was promoted. The salary chart indicates that Sachs has been the Assistant Deputy Administrator since at least 1995.[4]

Smith's claims regarding the transfer of Mike Mestemaker from the Juvenile Division back to the Adult Division also must be rejected. Smith's only evidence concerning Mestemaker's transfer is her own testimony regarding what Mestemaker allegedly told her at the time of the transfer. This hearsay testimony is insufficient to defeat summary judgment, and in any case, conflicts with the sworn testimony of Mestemaker and Strigari regarding the reasons for Mestemaker's return to the Adult Division. *See, e.g., Jacklyn v. Schering–Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 927 (6th Cir.1999) ("Hearsay evidence may not be considered on summary judgment.").

As the above paragraphs reveal, Smith has not met the burden of establishing her

prima facie case of purposeful discrimination. Although it is undisputed that Smith is a member of a protected class and that she is qualified for the job of Interviewer, she has not produced affirmative evidence to establish that she suffered a materially adverse employment action or that she was treated less favorably than similarly situated Caucasian employees.

### III. CONCLUSION

For the reasons set forth above, we AFFIRM the decision of the district court.

---

4. Smith's belief that the district court did not consider the evidence that her attorney faxed to the district court concerning Sachs is not borne out by the record. The only evidence that Smith's attorney faxed to the court were pages from Smith's deposition, a salary chart, and pages from OPDO telephone directories which list Judy Sachs as the "Assistant Deputy Administrator." The first two items were already presented to the court as attachments to Defendants–Appellees' motion for summary judgment. The telephone directory pages have no relevance to the case because Sachs' title was never disputed. Moreover, the district court specifically addressed Smith's claims regarding Sachs, including the salary difference, and correctly found that Smith's subjective preference for Sachs' position did not establish the existence of a discriminatory system of promotions at OPDO.